PAUL *vs.* THE STATE OF GEORGIA.

1. Where defendant voluntarily confessed to the killing of a girl nine years of age, in substance, as follows : that he killed her with a fence-rail because she told a lie on him the day before ; that she followed him down to the spring and he got some switches and whipped her for it ; that she ran up the hill to a haw-tree and cursed him, when he followed her, got a switch, and whipped her again ; that when he started off she cursed him again, and he got a rail from the fence, went back and knocked her on the head three times and she died ; and the evidence disclosed that the body of the deceased was found near the spring, the skull fractured by blows such as a rail would have made, and by it peach-tree switches frazzled and worn, and a fence-rail with blood on it, the end being broken off :

*Held,* that the confession was so thoroughly supported by corroborating circumstances of the *corpus delicti,* that this court will not interfere with the verdict of guilty of murder.

2. Where the evidence is not definite, that the defendant was fourteen years of age or over, but strongly points to such being the fact, and is clear as to his capacity to understand the distinction between good and evil, and as to his bad temper and character, and the jury find him guilty, and the presiding judge affirms the verdict upon motion for new trial, this court will not interfere.

Criminal law.   Confessions.   Evidence.   New trial. Before Judge CRISP.   Macon Superior Court.   December Term, 1879.

This case is reported in the opinion.

B. B. HINTON ;   A. A. CARSON ;   J. L. McCRARY, for plaintiff in error, cited, on capacity to commit crime, Code, §§4294, 4295 ; Whart. Am. Crim. Law, 97, 107 ; 5 Law Reports, 364 ; 5 *Ga.*, 310 ; 45 *Ib.*, *58.*   On confessions, Code, §§3792, 3793 ; 43 *Ga.*, 256 ; 23 *Ib.*, 297 ; 11 *Ib.*, 226 ; 20 *Ib.*, 60 ; 45 *Ib.*, 58 ; Ros. Crim. Ev., 144.

R. N. ELY, attorney-general ;  C. B. HUDSON, solicitor-general ;  JOHN R. WORRILL, for the state, cited on ca-

pacity, 3 *Ga.*, 310; 10 Allen, 398; 1 Hale's P. C., 22, 27; 1 Arch. Crim. Prac., 10; 1 Russ. on Crimes, 4; 4 C. & P., 236. On confessions, 56 *Ga.*, 44; 57 *Ib.*, 478; 45 *Ib.*, 43; 5, Halstead, 163; 1 Southard, 263; 31 Ala., 323; 2 Moody, 452; 1 Green's Crim. Law R., 398.

CRAWFORD, Justice.

Wilson Paul was indicted for and found guilty of murder; he submitted a motion for a new trial on the following grounds:

1. Because the verdict is contrary to the law of the case.

2. Because the verdict is contrary to the weight of the evidence.

3. Because the verdict is contrary to evidence.

4. Because the verdict is without evidence.

5. Because the verdict is contrary to law and evidence.

6. Because the verdict is contrary to the charge of the court in this that the judge charged the jury that "if the evidence showed that the prisoner was under fourteen years of age, then the presumption of law is that he is incapable of committing crime, and it devolves on the state to show that he had sufficient knowledge to know good from evil," whilst the testimony failed to show such knowledge. The motion was refused on all the grounds, and the defendant excepted.

Although there are six grounds upon which the new trial was sought, they may be considered and disposed of under two general heads, and are whether the evidence is sufficient to show that he committed the homicide, and if he did, is he legally responsible for the act?

The deceased was a girl of nine years of age, she was missing from her home on Sunday night, her absence gave no concern until her failure to return on Monday morning; search was made for her, and near the spring from which both deceased and prisoner's families used water, her remains were found and she evidently murdered.

1. The proof shows that the prisoner and the deceased

were left at home together when the last of the family went to church on Sunday morning; that the deceased had told her father that prisoner had ridden his ox through his cotton and knocked it out; the father had warned him before he left for church on Sunday morning that he must not do that again. On Monday morning he denied the killing to two different persons without being charged with it, and he was not with the searchers after the missing child.

B. F. Jones, one of the witnesses on the trial testified as follows: " I with others had been to the place where the child was killed. Everett Rhodes who had also been with us, was on his way to pick cotton; I told him that I knew Wilson was around there, and would go to him when we parted company; sometime after that Everett came to my house and said that Wilson was hid behind a little cotton patch near my house and behind a log. I went in that direction and as I jumped the fence, I looked down the lane and saw him; as soon as he saw me in about sixty yards he started to run, when Everett grabbed him and held him until I captured him; it was between 9 and 10 o'clock in the morning. The first words he spoke were: " Mr. Jones, I never killed that girl." I replied, "I never said you did." He said, " Mr. Jones turn me loose." I said " I can't, we will go and see what Mr. Kitchens says about it." He then said "now Mr. Jones I will tell you the truth, I did kill her." I asked him how? He said " I killed her with a fence-rail." I asked him why he did it, and he said, " because she told a lie on me the day before—Saturday, big Bud (meaning deceased's father) and sister went to meeting, and left me there to water the steer, and when they came back she told her father that I rode the steer through the field. And on Sunday she followed me down to the spring, and I got some switches and whipped her for it. She ran up the hill to a haw-tree and cursed me. I went up there and got a switch and whipped her again, and when I started off she cursed me

again and I went to the fence, got a rail, went back and knocked her in the head three times and she died."

This same witness, in answer to the question, " Did you see anything near the body that corroborated what he had told you ?  " I saw peach-tree switches lying close to the dead girl, and also a fence rail, with a piece broken off the end, which he told us were there."   Other witnesses testified to the same facts, and also to there being the stub-ends of switches at the spring.

The same statement, which he made to the witness Jones, he made also at the inquest to all present, and repeated it to Mr. Bell, the jailor, several times; and in connection therewith, said that *he whipped* her for telling lies on him, and *killed* her because she cursed him.   These confessions were not wanting in naturalness, consistency, nor corroboration; besides, they were freely and voluntarily made.   The testimony shows motive, shows the switches frazzled and worn, shows the rail with blood upon it, the skull fractured by the blows dealt as described, and the dead body with the merciless stripes inflicted. The confession of the prisoner, so thoroughly supported by the corroborating circumstances, in our judgment fully justified the jury in finding that he slew the deceased. Not only so, but takes the case out of that referred to in 43 *Ga.*, 256, where there was nothing but the bare confession, and no evidence whatever of the *corpus delicti.*

2. The second question in this case is as to the prisoner's legal responsibility for the commission of the act.

His exact age was not shown by any of the witnesses, but Daniel Jackson testified that he had the mother for his wife eleven years before, and that the prisoner was then running about, and was known as the Strickland boy. Riley Chamblin said that he knew the prisoner's mother thirteen or fourteen years before that time, and she had *two* children, one of whom was known as the Strickland boy.   Adeline Hill testified that he was the oldest of his mother's two boys, and was always called the Strickland

boy. So that he was certainly thirteen, and possibly four-teen years of age, but under the law the prisoner is always entiled to the benefit of any reasonable doubt, and it is never to be denied him. Admitting that he is under the age of fourteen years, he is only to be made amenable to the law where he knows the distinction between good and evil. Upon this point how stands the proof?

Daniel Hill testifies that he had as good a mind as most any boy, and that he compared in intellect very well with other boys between thirteen and fourteen years of age. Daniel Jackson: that he had a good mind, knew right from wrong, was hard-headed, and wanted his own way. Mary Moore swears that he has sense in some things, and in some he don't; he has a bad mind, he's not a good boy, he is mischievous, a bad boy to fight; I don't mean that he knows no better; of course he knows better.

Charles Barton testifies that he has known him fourteen or fifteen months; he has a good mind in regard to know-ing good from evil. G. F. Bell says that he has known him since the 9th or 10th of September last (before the trial), has seen him two or three times a day, conversed with him often, and thinks his intelligence very good. B. F. Jones says that prisoner is a sensible boy; he knows what is right and what is wrong, and thinks that he does know good from evil. B. Kitchens has known the prisoner for three years, and he has as much sense as any other boy of his color. It is further shown by other witnesses that he is vicious, has a bad disposition, has fusses with little children, has had to be punished therefor, all of which indicate the temper and character of the prisoner.

Not a single witness was brought to testify in rebuttal. The jury had the prisoner and the evidence before them, and upon their oaths they said that he did the killing; that he knew good from evil, and that he was guilty of murder; the judge, upon reviewing the whole case, upon a motion for a new trial, refused to grant it, and therefore the ver-dict must stand.

It has been repeatedly ruled by this court that it is the especial province of jurors to pass upon all questions of fact, and that they are better judges thereof than this court can possibly be, and unless there be some legal reason to take cases out of that general rule, they will not be disturbed.

Judgment affirmed.