## DREWRY *v.* THE STATE.

No. 17459. ARGUED JUNE 13, 1951—DECIDED JULY 10, 1951.

*Carlisle Cobb* and *Rupert A. Brown,* for plaintiff in error.

*D. M. Pollock, Solicitor-General,* contra.

CANDLER, Justice. This case comes to us on certiorari to the Court of Appeals. A grand jury in the Superior Court of Clarke County indicted Mrs. Kathleen Drewry for the penal offense of assault with intent to murder. The indictment in substance alleges that she unlawfully shot Miss Miriam Thurmond on December 23, 1949, with an intent to kill and murder

her. She was convicted of the offense charged and was sentenced to serve a term of from two to four years in the penitentiary. The Court of Appeals, with Judges Townsend and Felton dissenting, affirmed the conviction, and the majority, among other rulings, held that the presiding judge did not err on the trial, as contended, in refusing to declare a mistrial on the defendant's motion therefor or in failing, on timely written request therefor, to charge on the law respecting common-law marriages and the mutual right of such contracting parties to protect the relationship created thereby. *Drewry* v. *State*, 83 *Ga. App.* 354 (63 S. E. 2d, 429). And since these are the only rulings made by the Court of Appeals upon which error is assigned in the petition for the writ of certiorari, we will consider no other question made by the record. Certiorari Rule 45 (Code, § 24-4549); *Hall* v. *State*, 202 *Ga.* 619 (44 S. E. 2d, 234); *Siegel* v. *State*, 206 *Ga.* 252 (supra).

■ As to the motion for a mistrial, the overruling of which is properly excepted to, Mrs. Heery, a witness for the defendant, in direct response to questions propounded to her both by the trial judge and the solicitor-general, testified that she saw Mrs. Drewry, who was well known to her, on the night of December 23, 1949, and that the accused, in her opinion, did not at the time of the shooting have mind, memory, or reason sufficient to distinguish between right and wrong with reference to the act with the commission of which she is charged. Mr. Cobb, of counsel for the accused, was then permitted to resume his direct examination of the witness, and the record shows the following occurrence: Mr. Cobb: "You mean she was practically temporarily insane at that time—Is that what you mean?" The witness: "That is right." The Solicitor-General: "Now, Your Honor, please, I submit that there is no such thing as temporary insanity in Georgia." The Court: "I have never heard of it, but I am not an expert. Is there any definition of law as to temporary insanity?" The jury was then sent out, and counsel for the accused, contending that the judge's quoted remark was improper, moved for a mistrial. The motion was overruled and, on the jury's return to the box, the judge, speaking to the jury, said: "Before taking up the testimony, that remark about 'under the laws of Georgia temporary insanity was not rec-

ognized'—I again state to you that it is not recognized under our Georgia laws. I want it to be carefully understood that it was not any attempt on the part of the court to express an opinion of the defendant's mind. The court wasn't attempting to express any opinion of the defendant's mind, but simply telling counsel as a defense there is no defense of temporary insanity. Now, if delusional insanity comes up in the case, then I will properly charge you when the time comes up to do that." Thereafter, as the record shows, the court made no further reference to the remark complained of, or further effort to correct any harm which may have resulted to the accused from it, but twice thereafter in his general charge he instructed the jury that temporary insanity is not recognized in Georgia as a defense in criminal prosecutions. Obviously, if, as contended, injury resulted to the accused from the remark complained of, it was not erased or mitigated by anything which happened on the trial thereafter, but, to the contrary, was magnified. It is earnestly contended in behalf of the plaintiff in error that the trial judge by the quoted remark—the equivalent to his saying in the presence of the jury that he had never heard of temporary insanity, committed grave error, and that a mistrial should have been granted on the defendant's motion therefor. Concerning the defendant's defense of insanity, our law emphatically declares that an insane person shall not be convicted of any crime or misdemeanor with the commission of which he may be charged, provided the act so charged as criminal was committed in the condition of such insanity. Code, § 26-303. And it has been settled in this State for a long time by numerous decisions of this court that a person is insane, and hence not criminally responsible, when he or she does not have reason sufficient to distinguish between right and wrong in relation to a particular act about to be committed. *Roberts* v. *State*, 3 *Ga.* 310; *Choice* v. *State*, 31 *Ga.* 424; *Paul* v. *State*, 65 *Ga.* 152; *Strickland* v. *State*, 137 *Ga.* 115 (5) (72 S. E. 922); *Bryant* v. *State*, 191 *Ga.* 686 (13 S. E. 2d, 820); *McKethan* v. *State*, 201 *Ga.* 23 (39 S. E. 2d, 15). It is not necessary in this case to traverse again the almost illimitable field of theory and speculation to ascertain the principles of law which govern when insanity is relied on as a defense in the trial of a criminal case; but, as a matter of common

knowledge, it is undeniably true that insanity may be, and very frequently is, only a temporary malady and, in the instant case, if the accused, at the time of the act with the commission of which she is presently charged, did not have reason sufficient to distinguish between right and wrong with reference to that act, she would not be criminally responsible, and it would make no difference, in so far as the law is concerned, whether her condition of insanity at the time of the commission of the act was of a temporary nature or permanent in character, the test of criminal responsibility being the condition of her mind at the time of the commission of the act. *Quattlebaum* v. *State*, 119 *Ga.* 433 (46 S. E. 677). On her trial, the accused admitted the shooting and as a defense therefor relied upon insanity. She sought to prove by a witness that she was, at the time of the commission of the act, temporarily insane and that she, because of such condition, did not at the time have reason sufficient to distinguish between right and wrong in relation to the act so committed. By the remark that he had never heard of temporary insanity, the judge, upon whom our system of jurisprudence places the responsibility of correctly instructing the jury upon the law applicable to a case on trial, planted in the jury's mind the external indicia by which they were to determine the issue of insanity—that is, that it could not be temporary in nature; and from that the jury could only conclude, unless it was permanent, that no condition of insanity existed which would excuse the accused from criminal accountability for the commission of the act with which she was charged. And such is not our law. By the remark she was stripped completely, and we think wrongfully, of a defense provided by law, the injurious effect of which was not afterwards erased, if in law it could have been. "In jury trials the trial judge should be cautious and circumspect in his language and conduct before the jury. He must be fair to both sides, and the extent to which he may go in comments and remarks during the trial is governed by the fundamental principle that nothing should be said or done by him which will prejudice the rights of the parties litigant." 53 Am. Jur., 75, § 76. The trial judge should not in any manner disparage or cast suspicion upon any legitimate defense interposed by the accused.

Ewbank's Criminal Law (2d ed.), § 583). In this case, the remark made by the trial judge was not only a disparagement of the defendant's defense of insanity, but it was the equivalent of an assertion by him that such a defense did not in law exist when the condition of insanity was of temporary nature. The motion for a mistrial should have been granted.

■ Counsel for the accused, by a request made in writing at the proper time, called upon the court to charge the following: "1. If you find from the evidence, including the defendant's statement, that the defendant and John E. Drewry by agreement, in words of the present tense, to be man and wife, and being at the time capable of contracting marriage, with the intention thereby and thereupon to assume such relation, that such informal contract would be a valid marriage in this State." And "2. I further charge you, if you find such relation existed between the defendant and John E. Drewry, each would have the mutual right to protect such relationship and a shooting of a third person by one of them to prevent adultery with the other may be justified by a real or apparent necessity presented by the facts and circumstances as they appear to her at the moment of her interposition to prevent the adultery." A denial of these two requests is the subject matter of the fourth ground of the motion for a new trial. Under the ruling of this court by a majority of the Justices in *Lefkoff* v. *Sicro*, 189 *Ga.* 554 (6 S. E. 2d, 687, 133 A. L. R. 738)—holding that a valid common-law marriage may be consummated in this State by parties who are capable of contracting marriage by an actual agreement, in words of the present tense, with the intention of thereby and thereupon assuming the relationship of husband and wife, and by a full unanimous bench in *Cloud* v. *State*, 81 *Ga.* 444 (7 S. E. 641)—holding that it is justifiable homicide under § 26-1016 of the Code for a husband to kill a third party when there is a real or apparent necessity for him to do so in order to prevent him from committing an impending act of adultery with his wife—the principles of law embodied in the request to charge are abstractly correct; but the decision in *Lefkoff* v. *Sicro,* supra, is not binding upon us, since it did not have the concurrence of a full bench of six Justices, as the court was then constituted; and, after careful thought and

consideration, we have reached the very definite conclusion that the ruling there made as to the essentials of a valid common-law marriage in this State are not in accord with the requirements of our Code, § 53-101. Therefore, we must and will respectfully decline to approve and follow it. However, in that case, Mr. Justice Samuel C. Atkinson filed a dissenting opinion, which was concurred in by Mr. Justice Duckworth, who is the present Chief Justice of this court, which we think, and accordingly hold, correctly states the essentials of such an informal marriage in Georgia, and we fully adopt his dissenting opinion for our holding in this case that the trial judge did not err, as contended, in failing to give the requested charge upon the subject of common-law marriages. In other words, the first request, as made, was not for the charge of a correct principle of law, and the failure to give it was for that reason not erroneous, and citation of authority for this is not necessary. As we have pointed out, the second requested charge, under the ruling in the *Cloud* case, supra, stated a correct principle of law; but, since the trial judge was not required, as we have held, in the absence of a proper request, to charge upon the subject of common-law marriages, a charge upon the second request would have been wholly inappropriate. The statement of the accused was sufficient to show a common-law marriage between John E. Drewry and herself under the requirements therefor as pointed out in the dissenting opinion in the *Lefkoff* case, which we have here adopted as a correct pronouncement of the law of this State on that subject, and had the first request to charge followed the rule as there announced, a charge upon both requests would have been required (*Hayden* v. *State*, 69 *Ga.* 731; *Underwood* v. *State*, 88 *Ga.* 47, 13 S. E. 856); but since the first did not request the charge of an abstractly correct principle of law, a failure to give either, as requested, was not error.

Whether the accused be guilty or innocent, she has not, in our opinion, had a fair trial under the Constitution and laws of her State; and so believing, we must, for the reason stated in the second division of this opinion, reverse the judgment rendered by the Court of Appeals.

*Judgment reversed. All the Justices concur, except Atkinson, P.J., who dissents.*