METROPOLITAN LIFE INSURANCE
COMPANY, Plaintiff,

v.

Carolyn W. LUCAS, et al., Defendants.

Civ. A. No. 90–230–2–MAC (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

April 17, 1991.

Bradley J. Survant, Jones, Cork & Miller, Macon, Ga., for plaintiff.

Walter S. Chew, Jr., Chew & Lambert, Montezuma, Ga., H. James Winkler, Liggin & Winkler, Montezuma, Ga., for defendants.

## ORDER

OWENS, Chief Judge.

The present action originally came before the court upon Metropolitan Life Insurance Company's ("Met Life") motion for declaratory judgment and interpleader. By this court's order, Met Life paid into the registry of the court the proceeds due under the Federal Employees Group Life Insurance ("FEGLI") policy which is the subject of the present dispute. Met Life was then dismissed from this case. What remains for the court's determination are the conflicting claims of entitlement to the proceeds of the FEGLI policy which Met Life's insured, the late Mr. Curtis Alton Williams, obtained without designating a beneficiary. During a conference with the court held on March 27, 1991, the parties agreed to submit the matter to the court without further oral argument. After careful consideration of the briefs submitted by the parties, the laws of the State of Georgia and the State of Florida, and the record as a whole, the court issues the following order.

## FACTS

The facts in this case are essentially undisputed. The deceased, Curtis Alton Williams ("Mr. Williams"), was married to defendant Martha G. Williams ("Martha Williams") from March 6, 1953, until June of 1974, when the two were divorced. Deposition of Martha Williams: Tab 10, p. 19. Both worked at Warner Robins Air Force Base. Mr. Williams and Martha Williams had one child, defendant Carolyn Williams Lucas ("Carolyn Lucas"), who was born on September 12, 1957.

In 1977, Mr. Williams began living with defendant Rose M. Williams, a/k/a Rose Woodruff ("Rose Williams"), in Warner Robins. Apparently, after a discussion in 1978 concerning whether they would have a formal marriage ceremony, the two decided instead to simply live together, dispensing with the formality of a wedding.[1] The record is replete with the depositions of community members who testified that Rose Williams and Mr. Williams thereafter held themselves out as husband and wife. *See* Depositions of William Lumpkin, Thomas Mullis, *et al.*: Tab 7. In August of 1980, after being hospitalized for injuries sustained in a motorcycle accident, Mr. Williams executed a power of attorney designating Rose Williams as his wife and granting her that general power of attor-

---

1. The court is aware that Martha Williams and Carolyn Lucas dispute whether Rose Williams and Mr. Williams had any such discussion or agreement.

ney. *See* Deposition of Rose Williams: Tab 9, Exhibit 4.

In December of 1980, Mr. Williams and Rose Williams purchased a mobile home from Peggy's Mobile Homes, Inc.; the receipt reflects that the sale was a joint purchase signed by both Mr. Williams and Rose Williams. *See Id.*, Exhibit 2. Mr. Williams and Rose Williams lived together in Warner Robins until 1981, when together they moved to Leesburg, Florida. Their Florida application for certification of title lists both Mr. Williams and Rose Williams as the owners of their Florida mobile home residence.

Martha Williams stated that upon her inquiry with regard to his marital status, Mr. Williams told her "Now, Martha, you don't have to worry about me getting married." *See* Deposition of Martha Williams: Tab 10, p. 36. She also testified that up until 1984, Mr. Williams' retirement checks were sent to her home. These checks were deposited in their joint bank account. Beyond this, however, neither Martha Williams nor Carolyn Lucas presented evidence of a personal nature to controvert Rose Williams' claim to be the common-law wife of Mr. Williams. Deposition of Carolyn Lucas, pp. 5–6.[2]

Mr. Williams died a resident of the State of Florida in 1989. Mr. Williams' FEGLI policy from Met Life, Complaint Exhibit 1, does not name a designated beneficiary. Martha Williams testified that her claim was based not upon a claim that she and Mr. Williams remained married but upon her alleged payment of the expenses for Mr. Williams' funeral. Deposition of Martha Williams, p. 19. Carolyn Lucas claims entitlement to the proceeds as his next of kin. Deposition of Carolyn Lucas, p. 4. Rose Williams alleges that she was Mr. Williams' common-law wife and is, therefore, entitled to the proceeds of his FEGLI policy.

## DISCUSSION

Chapter 87 of the "Government Organization and Employees Act" ("the Act"), 5 U.S.C. 8701–8716, covers the area of "Life Insurance" for federal employees. Upon the death of a covered employee, the Act provides a specified order of precedence for the determination of to whom benefits under a FEGLI policy shall be paid. 5 U.S.C. § 8705. The Act provides:

"The amount of group life insurance ... in force on an employee at the date of his death shall be paid ... to the person or persons surviving at the date of his death in the following order of precedence:

First, to the beneficiary or beneficiaries designated by the employee ...

Second, if there is no designated beneficiary, to the widow or widower of the employee.

Third, if none of the above, to the child or children of the employee ..."

*Id.* There is no dispute that upon the death of Mr. Williams he had yet to designate the beneficiary of his FEGLI policy. The court must determine if Rose Williams is the lawful widow of Mr. Williams. *See Spearman v. Spearman*, 482 F.2d 1203, 1204–05 (5th Cir.1973).[3] Failing such a determination, Carolyn Lucas, as Mr. Williams' only living child, has a rightful claim to the proceeds of the policy.[4]

**2.** During the conference with this court, the parties discussed the order of the Superior Court of Macon County issued with regard to the death certificate of Mr. Williams. *See* Complaint: Tab 1, Exhibit B. With all due respect to that court and the full understanding of counsel for the parties in the case *sub judice*, this court notes that the modification of the death certificate was not a determination based upon an adversarial proceeding which included all interested parties. The court, therefore, bases no part of its decision upon Exhibit B to the complaint.

**3.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc) the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**4.** Martha Williams cannot be heard to assert a valid claim to the proceeds of the FEGLI policy, as she no longer stood in a legal relationship to Mr. Williams, save perhaps that of a creditor for the cost of the funeral. Such a creditor is not designated as a possible beneficiary under the Act.

The parties do not dispute that the laws of the state of domicile of the deceased at death are determinative as to whether one stands in relation to the deceased at the time of his/her death. *Metropolitan Life Ins. Co. v. Manning,* 568 F.2d 922, 926 (2nd Cir.1977). The court must analyze whether, under Florida law, Mr. Williams and Rose Williams were *lawfully married* at the time of his death. Interestingly, the State of Florida does not itself recognize the doctrine of common-law marriage, but determines the validity of a claimed marriage by the laws of the state where the common-law marriage allegedly took place. *Young v. Viruet de Garcia,* 172 So.2d 243 (Fla.1965) (*citing Goldman v. Dithrich,* 131 Fla. 408, 179 So. 715 (1938)).

In *Young,* the Florida District Court of Appeal examined the laws of Puerto Rico, which do not recognize common-law marriage, to determine the validity of plaintiff's right to exercise her right to sue under Florida's wrongful death statute. *Id.* at 244. Similarly, this court, in order to determine if Rose Williams and Mr. Williams were lawfully married under the laws of the State of Florida, must evaluate Rose Williams' claim that she was Mr. Williams' common-law wife under the laws of the State of Georgia. *See Smith v. Heckler,* 707 F.2d 1284, 1286 (11th Cir. 1983) ("Florida would recognize such a [common-law] marriage if it were considered valid in Alabama, where the relationship was established").

It is undisputed that the State of Georgia, unlike Florida, does recognize the doctrine of common-law marriage. *Lefkoff v. Sicro,* 189 Ga. 554, 6 S.E.2d 687, 693–93 (1939). In Georgia, the prerequisites for a valid marriage are set out in O.C.G.A. § 19–3–1, which provides:

> To constitute a valid marriage in this state, there must be: (1) Parties able to contract; (2) An actual contract; and (3) Consummation according to law.

Georgia case law confirms that this code section applies equally to both ceremonial and common-law marriages. *Drewry v. State,* 208 Ga. 239, 65 S.E.2d 916 (1951). The code section reflects Georgia's policy favoring the validity of marriages; validity is presumed absent proof negating the possibility of validity. *Bunn v. State,* 208 Ga. 304, 66 S.E.2d 745 (1951). This policy is also clear from Georgia law which allows proof of common-law marriage by proof of cohabitation in conjunction with the husband and wife holding themselves out to the world as married. *Brown v. Brown,* 234 Ga. 300, 215 S.E.2d 671 (1975).

The evidence in the case *sub judice* meets the requirements for the establishment of a common-law marriage in Georgia. There is no dispute that Mr. Williams and Rose Williams were competent to make a contract when they began to live together in Warner Robins after Mr. Williams' divorce. Rose Williams gave uncontroverted evidence of the shared agreement to become husband and wife, simply dispensing with a formal wedding/marriage. While this testimony was self-serving it is supported both by their actions, as witnessed by people in the community, and as evidenced by the power of attorney executed by Mr. Williams himself, designating Rose Williams as his wife, while still a Georgia resident. The court hereby finds that while in Georgia, Mr. Williams and Rose Williams were, under the laws of the State of Georgia, lawfully married. Therefore, under Florida law Mr. Williams and Rose Williams were, at the time of his death, married. Under Florida law and under the terms of the Act, 5 U.S.C. § 8705, Mr. Williams and Rose Williams were lawfully married. Thus, under the order of precedence set under the Act, Rose Williams is entitled to the proceeds of the FEGLI policy.

Let judgment be entered in favor of Rose Williams. The clerk of court shall dispense the funds paid into the registry by Met Life in accordance with normal court procedures.

SO ORDERED.