**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 28, 2016**

# In the Court of Appeals of Georgia

A16A1001. RUSSELL v. SPARMER.

BRANCH, Judge.

In an effort to dissolve both her domestic and business partnerships with Todd M. Sparmer, Vickey Lynn Russell filed suit against Sparmer in Hall County Superior Court, asserting claims for divorce, breach of contract, fraud, unjust enrichment, and conversion of partnership assets. The trial court granted summary judgment to Sparmer on Russell's claim for divorce, finding that the parties were not legally married. The remainder of Russell's claims proceeded to a bench trial, following which the trial court entered an order finding that a business partnership existed between the parties and providing for an equitable division of the parties' joint assets. Sparmer thereafter filed a motion under OCGA § 9-15-14 seeking to recover the attorney fees he allegedly expended in defending Russell's claim for divorce.

Following a hearing, the trial court granted that motion and awarded Sparmer $39,000.65 in attorney fees. This Court subsequently granted Russell's application for a discretionary appeal.

On appeal, Russell challenges the attorney fee award, arguing that the trial court erred in finding that her divorce claim could serve as the basis of such an award under OCGA § 9-15-14. Additionally, Russell contends that the trial court's order awarding fees is deficient in that it fails to designate the statutory subsection under which the award was made; does not contain the requisite findings of fact and conclusions of law necessary to support such an award; and awards a lump sum without explaining how the court calculated the amount of fees awarded. For reasons explained more fully below, we find that the trial court erred in awarding Sparmer attorney fees, and we therefore reverse the trial court's order.

The relevant facts are undisputed and show that Russell filed her complaint in March 2013 and that approximately nine months later, in November 2014, Sparmer filed a motion for partial summary judgment. Sparmer sought summary judgment on Russell's claim for divorce on the grounds that the two were not legally married. In opposing Sparmer's motion for partial summary judgment, Russell made clear that she was not contending that the parties had a common law marriage. Rather, her

position was that the parties had an unlicensed ceremonial and self-solemnized marriage. To support her position, Russell submitted an affidavit in which she attested to the following undisputed facts. The parties began an intimate relationship in the mid-1990s and began living together in Georgia in 1997. While traveling in Greece in 1998, they decided to marry in an "informal ceremony," bought matching rings, and exchanged vows in front of a church.[1] In relevant part, Sparmer's vow provided, "I want to share the rest of my life with you and you alone," and Russell's vow provided, "I am proud to spend the remaining days of my life with you. To be your woman, loving you and no other." That night, the couple told a waitress that they had just been married, and when they returned to the United States, they told others that they had been married and introduced each other as husband and wife. Since then, Sparmer has given Russell several greeting cards identifying her as his wife. Russell also submitted the affidavits of several of the parties' acquaintances, each of whom attested that the parties held themselves out as husband and wife after they returned from Greece.

---

[1] Sparmer does not refute Russell's factual allegation that the two exchanged vows in Greece, although he challenges the legal implications thereof, denying that they "participate[d] in a marriage ceremony" or "entered into an agreement or contract to be married." On appeal, Sparmer characterizes the parties' vows as "words of 'Commitment.'"

The trial court granted Sparmer's motion, finding that pursuant to OCGA § 19-3-1.1, Georgia law did not recognize common law marriages entered into after January 1, 1997; that the parties had not obtained a marriage license; and that the parties were not married by an officiant. Following entry of that order, Sparmer filed a motion under OCGA § 9-15-14, seeking attorney fees related to his defense of Russell's divorce claim. The trial court did not rule on the attorney fee motion prior to the bench trial on Russell's remaining claims, which took place in February 2015. After entry of final judgment, Sparmer filed an amended motion for attorney fees, seeking to recover amounts expended in his defense of all claims.

Following a hearing on the attorney fees motion, the trial court stated that it was awarding fees to Sparmer based on Russell's "heavily litigated yet unsuccessful claim" for divorce. Referencing its order granting Sparmer partial summary judgment, the trial court stated that the divorce claim "had no basis in law or fact" and that Russell had admitted at trial that the parties were not legally married. The court then found that the claim for divorce "was made to unnecessarily expand the proceedings and was totally groundless, totally frivolous, and vexatious. As a result, and pursuant to OCGA § 9-15-14, the court awards [Sparmer] attorney[] fees in the amount of $39,000.65." Russell now appeals from that order.

4

1. Russell argues that the trial court erred in finding that her claim for divorce could serve as the basis of an attorney fee award because that claim was neither frivolous nor interposed for delay. We agree.

Under OCGA § 9-15-14 (a), a trial court shall award reasonable and necessary attorney fees and expenses of litigation when a party has asserted a position that lacked any justiciable issue of law or fact such that it could not reasonably be believed that the court would accept the claim in question. Under OCGA § 9-15-14 (b), a trial court may award attorney fees and expenses if it finds that a party brought an action or raised a defense that lacked substantial justification,[2] brought an action for delay or harassment, or unnecessarily expanded the proceeding by other improper conduct. We review an award under subsection (a) under the "any evidence" standard, and we review an award under subsection (b) for an abuse of discretion. *Reynolds v. Clark*, 322 Ga. App. 788, 789-790 (1) (746 SE2d 266) (2013). "[T]o the extent that the evidence relevant to the question of attorney fees consists of the state of the law, we make our own assessment of that evidence and decide for ourselves whether the claim asserted below presented a justiciable issue of law." *Gibson Constr. Co. v. GAA*

---

[2] Subsection (b) defines the term "lacked substantial justification" as meaning "substantially frivolous, substantially groundless, or substantially vexatious."

*Acquisitions I*, 314 Ga. App. 674, 676 (725 SE2d 806) (2012) (citations, punctuation and footnote omitted).

A court making an award of attorney fees under OCGA § 9-15-14 must make express findings of fact as to the conduct of the party on which the award is based. *Williams v. Becker*, 294 Ga. 411, 413-414 (2) (a) (754 SE2d 11) (2014); *Robinson v. Williams*, 280 Ga. 877, 880 (3) (635 SE2d 120) (2006). The order awarding such fees must also contain express conclusions of law – i.e., the order must conclude that the conduct as found by the court meets the standard for awarding fees set forth in either subsection (a) or (b) of OCGA § 9-15-14. *Williams*, 294 Ga. at 413-414 (2) (a). See also *McKemie v. City of Griffin*, 272 Ga. 843, 844 (4) (537 SE2d 66) (2000); *McClure v. McCurry*, 329 Ga. App. 342, 344 (2) (765 SE2d 30) (2014).[3] Here, the trial court awarded Sparmer attorney fees based on its findings that the claim for divorce had no basis in law or fact, as evidenced by the court's grant of summary judgment against Russell on that claim; and that Russell admitted at trial that she knew the parties were

---

[3] As a general rule, an order awarding attorney fees under OCGA § 9-15-14 must specify "whether the award is made under subsection (a) or (b) or both." *Williams*, 294 Ga. at 413-414 (2) (a). The order at issue in this appeal, however, fails to specify the statutory subsection under which the award was made. We therefore consider whether a fee award was appropriate under either subsection.

6

not legally married. Neither of these factual findings, however, is sufficient to support an award of attorney fees.

The mere fact that Sparmer received summary judgment on the divorce claim, without more, will not support an attorney fees award. See *Brown v. Kinser*, 218 Ga. App. 385, 387 (1) (461 SE2d 564) (1995) ("[a]n applicant is not entitled to attorney fees [under OCGA § 9-15-14] merely because summary judgment was granted in his favor; grant of summary judgment does not per force result in an award of attorney fees for the prevailing party"); *Hyre v. Paxson*, 214 Ga. App. 552, 556 (10) (b) (449 SE2d 120) (1994) (same). Thus, in determining whether Russell's divorce claim had any factual merit or presented a justiciable issue of law, the question is not whether Russell was unsuccessful on that claim. Rather, for purposes of OCGA § 9-15-14, the relevant question is whether some authority arguably supported Russell's position. See *Hall v. Hall*, 241 Ga. App. 690, 692 (1) (527 SE2d 288) (1999) (where a party asserts "an arguably meritorious position, there [is] not a 'complete absence of any justiciable issue of law or fact'" such that an award of attorney fees is appropriate). In this regard, we must consider where there is any controlling authority directly on point and whether there is any authority that arguably supported Russell's position that she and Sparmer had a valid unlicensed, ceremonial and self-solemnized

7

marriage. See *DeKalb County v. Adams*, 263 Ga. App. 201, 203-204 (587 SE2d 302) (2003) (reversing an award of attorney fees under subsection (b) and finding that a party's argument was not substantially frivolous, groundless, or vexatious where "there was no controlling authority directly on point and [the party] cited authority that arguably supported its position") (footnote omitted). See also *Brown v. Gadson*, 298 Ga. App. 660, 661-662 (680 SE2d 682) (2009). "And we must keep in mind that OCGA § 9-15-14 [] is intended to discourage the bringing of frivolous claims, not the presentation of questions of first impression about which reasonable minds might disagree or the assertion of novel legal theories that find arguable, albeit limited, support in the existing case law and statutes." *Gibson Const. Co.*, 314 Ga. App. at 677 (reversing an award of attorney fees under subsection (a)).

Here, the trial court's conclusion that Russell's claim for divorce "had no basis in law or fact" appears to be based on the abolition of common-law marriage in Georgia, the parties' lack of a marriage license, and the fact that the parties' ceremony lacked an officiant. However, Russell has never claimed that she and Sparmer were

8

parties to a common-law marriage.[4] Rather, as noted above, she has consistently maintained that she and Sparmer were parties to an unlicensed, ceremonial marriage, which they self-solemnized. Russell therefore asserted her claim for divorce in an effort to ensure that all aspects of her relationship with Sparmer were legally dissolved. In other words, given that Russell was terminating her business relationship with Sparmer, she did not want to leave open the possibility that she and Sparmer might be legally married. Thus, in her lawsuit seeking a division of the couple's assets, Russell asserted, among other things, her claim for divorce. We find that given relevant Georgia law, Russell's divorce claim cannot be classified under OCGA § 9-15-14 as frivolous or as a claim that was interposed for delay.

A valid marriage in Georgia requires: "(1) Parties able to contract; (2) An actual contract; and (3) Consummation according to law." OCGA § 19-3-1; *In re*

---

[4] Prior to 1997, Georgia defined a common law marriage as a marriage that was both "unlicensed and non-ceremonial." *In re Estate of Smith*, 298 Ga. App. 201, 202 (679 SE2d 760) (2009) (citation and punctuation omitted). To prove the existence of a common law marriage, a party was required to show by a preponderance of the evidence that the parties had the capacity to contract; that they lived together as husband and wife and intentionally held themselves out as such; and that the relationship was consummated. See *Franklin v. Franklin*, 253 Ga. App. 147, 148 (1) (558 SE2d 738) (2002); *Allen v. State*, 60 Ga. App. 248 (3 SE2d 780) (1939). Additionally, all of these elements must have coexisted simultaneously. *In re Estate of Smith*, 298 Ga. App. at 202.

*Estate of Love*, 274 Ga. App. 316, 320-321 (3) (618 SE2d 97) (2005). Here, there is no suggestion that either party was unable to contract. See OCGA § 19-3-2 (prospective spouses must be of sound mind, at least 18 years of age, not currently married, and not related to each other by blood or marriage within certain degrees). Moreover, the record contains some evidence of an "actual contract," i.e., that the parties consented to marry each other and possessed a present intention to be married to each other. See *Brown v. Brown*, 234 Ga. 300, 301-302 (215 SE2d 671) (1975) (explaining that an "actual contract" for purposes of the marriage statute requires "a present intent to marry"); OCGA § 19-3-4 ("[t]o constitute an actual contract of marriage, the parties must consent thereto voluntarily without any fraud practiced upon either").

The Supreme Court's decision in *Askew v. Dupree*, 30 Ga. 173 (1860), also provides some support for Russell's claim that the parties were married. In *Askew*, the Court held that, absent a statute affirmatively declaring to be void "marriages not celebrated in the prescribed form," a marriage "deliberately and intentionally entered into" by parties who are able to contract is valid, notwithstanding their failure to conform to any other legal prerequisites. Id. at 189. Notably, the *Askew* Court

10

observed that "a self-solemnized marriage" would be valid under its holding.[5] See id. at 190.

Furthermore, the validity of a marriage in Georgia is not affected by an officiant's want of authority. See OCGA § 19-3-42.[6] Thus, Russell's claim that the parties' Greek ceremony constituted a marriage ceremony even though it was not performed by an officiant did not entirely lack a legal or factual basis. See *Adams*, 263 Ga. App. at 203-204; *Hall*, 241 Ga. App. at 691 (1).

With respect to the question of whether the lack of a license rendered the parties' marriage invalid, we note that neither the trial court nor the parties have identified any binding authority conclusively establishing that the failure to procure a marriage license renders a ceremonial marriage void, and we are aware of no such

---

[5] We note that *Askew* has never been overruled or otherwise called into question, and Georgia still has no statute expressly providing that "marriages not celebrated in a prescribed form" are considered void. Moreover, given that *Askew* did not address common law marriage, Georgia's abolition of common-law marriage, without more, did not obviously and necessarily negate the holding of that case.

[6] That statute provides: "A marriage which is valid in other respects and supposed by the parties to be valid shall not be affected by want of authority in the minister, Governor or any former Governor of this state, judge, city recorder, magistrate, or other person to solemnize the same; nor shall such objection be heard from one party who has fraudulently induced the other to believe that the marriage was legal."

11

authority.[7] We agree that, as a practical matter, a license would be the best evidence

of the existence of a marriage. See *Lefkoff v. Sicro*, 189 Ga. 554, 564, 567 (1) (6 SE2d

687) (1939) (distinguishing between the fact of marriage and evidence thereof).[8] The

Supreme Court of Georgia nevertheless has recognized that "a marriage may be

proved by the testimony of any witness who is acquainted with the facts that under

the law are sufficient to constitute a valid marriage." *Davis v. Deloney*, 165 Ga. 379,

381 (140 SE 759) (1927) (punctuation omitted).[9]

---

[7] Various statutes set forth the requirements for obtaining and issuing marriage licenses, see OCGA §§ 19-3-30; 19-3-30.1; 19-3-31; 19-3-33; 19-3-34; 19-3-35; 19-3-35.1; 19-3-36; 19-3-37; 19-3-40; 19-3-41; 19-3-44, and the penalties to be imposed upon an issuing authority or officiant failing to comply with these requirements, see id. §§ 19-3-32; 19-3-45; 19-3-46; 19-3-48. None of these statutes, however, expressly renders void an unlicensed ceremonial marriage between persons able and willing to contract. Cf. id. § 19-3-5 (a) ("Marriages of persons unable to contract, unwilling to contract, or fraudulently induced to contract shall be void.").

[8] The Supreme Court's holding in *Lefkoff* was disapproved in *Drewry v. State*, 208 Ga. 239 (65 SE2d 916) (1951), to the extent that the Court in *Lefkoff* did not require cohabitation as an element of common-law marriage. See *Drewry*, 208 Ga. at 243-244 (2).

[9] In its order granting Sparmer's motion for partial summary judgment, the trial court summarily stated that "the formality of a marriage license and/or ceremony are absolutely required" in Georgia. In support of this conclusory statement, the trial court cited only OCGA §§ 19-3-1 and 19-3-1.1. Neither statute on which the trial court relied, however, expressly requires that to be valid, a marriage must be evidenced by a license and/or performed by an officiant.

Moreover, the trial court's assertion that Russell testified that she "knew full well the parties were not married" is not supported by the record. Russell's testimony on this issue occurred during the trial on the merits of her remaining claims, after the trial court had ruled that the parties did not have a valid marriage. When read in its entirety, Russell's testimony in this respect is largely equivocal, evincing a layperson's struggle to articulate her understanding of the distinctions between ceremonial, common-law, and "legal" marriage, which, as the above-referenced authorities show, arguably may be open to interpretation. Furthermore, it is axiomatic that, standing alone, a party's purported "knowledge" of the resolution of an arguably debatable question of law has little, if any, bearing on the proper resolution of that question. See, e.g., *Everett v. Norfolk Southern Ry. Co.*, 292 Ga. 106, 108 (1) (a) (734 SE2d 388) (2012) (noting that legal questions must be decided by a court).

Finally, we note that the trial court's observation that Russell's divorce claim was "heavily litigated" also serves to demonstrate that the claim was not frivolous. In support of his attorney fee claim, Sparmer presented the testimony of Keisha Chambless, the attorney who had primary responsibility for defending Sparmer with respect to Russell's claim for divorce. Chambless testified that it was not "an easy matter to determine whether the asserted marriage was, in fact, a [legal] marriage."

13

Chambless explained that the divorce claim presented a number of "interesting issues" that had "multiple layers." And on cross-examination, Chambless reiterated that the question of whether the parties were married "wasn't an easy matter to determine," and that had it been easy, she would not have been required to spend so much time on the issue.

In light of the foregoing, we conclude that given the particular facts of this case, Russell's claim for divorce was not frivolous under OCGA § 9-15-14 – i.e., it did not lack a justiciable issue of law or fact and it did not lack substantial justification. Nor does the record show that Russell asserted her divorce claim in bad faith. In other words, no evidence suggests that Russell asserted the claim solely for harassment or to delay the proceedings. Consequently, we reverse the trial court's § 9-15-14 fee award insofar as the award was based on Russell's divorce claim. In reaching this conclusion, we emphasize that we express no opinion on the merits of Russell's substantive claim that the parties were married. That claim is not before us, and the trial court's ruling on that issue thus remains binding on the parties. We hold only that, under the facts presented, Russell's divorce claim could not serve as the basis for an award of attorney fees under § 9-15-14.

14

2. Given our ruling in Division 1, supra, it is unnecessary to address Russell's remaining claims.

For the reasons set forth above, the order of the trial court awarding Sparmer attorney fees is reversed, and the case is remanded for proceedings consistent with this opinion.

*Judgment reversed. Mercier, J., concurs. Ellington, P. J., concurs in judgment only.*