**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**November 29, 2021**

# In the Court of Appeals of Georgia

A21A1674. CHEN v. CHEN.

BROWN, Judge.

Xing Chen ("Husband") filed this divorce action against Zhi Chen ("Wife"), asserting that the parties were married in 2016.[1] Wife counterclaimed for divorce, contending that the parties were married in 2007, following a traditional wedding ceremony, although they did not obtain a marriage license until 2016. After a hearing, the trial court issued an order finding that the parties entered into a valid marriage in 2007. We granted Husband's application for interlocutory review of the court's order and now affirm.

---

[1] In his original complaint, Husband stated the parties were married on October 7, 2017, but later amended his complaint.

"When a question of law is at issue, as here, we review the trial court's decision de novo." *Colbert v. Colbert*, 321 Ga. App. 841 (1) (743 SE2d 505) (2013). However, "[t]he trial court's factual findings will be upheld if there is any evidence to support them." *Alejandro v. Alejandro*, 282 Ga. 453 (1) (651 SE2d 62) (2007).

In the summer of 2007, Husband and Wife, unmarried at the time, learned that Wife was pregnant. According to Wife, the parties decided to marry because of the pregnancy. On October 7, 2007, they held a celebration with their family and friends at a restaurant in New York. A video recording of the celebration, which Wife produced at the hearing, showed that Wife wore a white dress and Husband wore a tuxedo, that the two exchanged rings, that traditional wedding march music was played during the ceremony while the parties were on stage, that they bowed to one another, as is traditional in a Chinese ceremony, and that two emcees officiated the wedding, one of which pronounced them husband and wife. The parties had photographs taken on the day, one showing Husband kneeling before Wife and another showing Husband flipping up Wife's veil. According to Wife, the parties had a groomsman and bridesmaid, received wedding gifts, including a plaque stating "congratulations on your marriage," and subsequently honeymooned in China.

Husband testified that the celebration was a "dinner feast" and that he did not believe the parties were married as a result. He did not recall exchanging rings or vows or the parties bowing to each other. Husband denied telling anyone he was married, but acknowledged a November 2007 note from him to Wife in which he wrote "My darling wife." Husband also testified that the parties did not merge finances or file a joint tax return until 2016, and that he continued to date other people. Husband was married to another woman from 2009 to 2014, but admitted that he lived with Wife during this time and had another child with Wife in 2012. Wife testified that she knew about this marriage and understood it to be a "false marriage." Husband admitted that the other woman lived in another state during their marriage and had obtained a green card as a result of the marriage.

After Husband and the other woman divorced in 2014, Wife testified that she wanted a marriage license to prevent Husband from entering into any more marriages with other women. According to Wife, she believed that the parties had married in 2007, but she later learned from friends that she needed a marriage license in the United States to be "legally, formally married." On October 7, 2016, nine years to the day from the parties' celebration in New York, Husband and Wife had a marriage ceremony at a courthouse in Gwinnett County and obtained a marriage license.

3

Husband testified that the parties married in 2016 because they had three children together, and he was concerned that Wife would not be provided for if he died.

In 2020, Husband filed a complaint for divorce, identifying the date of the parties' marriage as October 7, 2016. Wife filed an answer and counterclaim for divorce, identifying the date of marriage as October 7, 2007, the date of the celebration in New York. According to the trial court, the parties asked the court "to make a factual determination as to when the parties were married before any further proceedings. . . ." (Emphasis omitted.)

At the close of the hearing on the issue, the trial court ruled that the parties were married as of October 7, 2007, and subsequently issued a detailed, written order. The trial court explicitly resolved any conflicts in the parties' testimony in favor of Wife and found "that all the credible evidence supports the conclusion and finding by the [c]ourt that the ceremony conducted in October of 2007 was intended by both parties to be the lawful marriage ceremony between the parties." The court issued a certificate of immediate review for its order, and we granted Husband's application for interlocutory review.

1. Before addressing Husband's challenges to the trial court's order, we must first determine the applicable substantive law. As Husband notes in his brief, neither

4

party argues that New York law applies in determining the date of the parties' marriage. Moreover, neither party gave notice that New York law might apply pursuant to OCGA § 9-11-43 (c), which pertinently provides that "[a] party who intends to raise an issue concerning the law of another state or of a foreign country shall give notice in his pleadings or other reasonable written notice." In the absence of adequate notice under OCGA § 9-11-43 (c), Georgia courts apply Georgia law. See *Fortson v. Fortson*, 204 Ga. App. 827, 828 (1) (421 SE2d 106) (1992) ("[w]here a party has failed to provide sufficient notice of intent to rely upon foreign law, the law of this state shall apply"). See also *Harvey v. Merchan*, 311 Ga. 811, 818 (2) (b) (i) (860 SE2d 561) (2021) ("[a]bsent adequate notice under OCGA § 9-11-43 (c), [Georgia courts] presume that the foreign law is the same as Georgia's"). Accordingly, we will apply Georgia law to the issue before us. Compare *Norman v. Ault*, 287 Ga. 324, 325 (1) (695 SE2d 633) (2010).

2. Husband contends that the trial court erred in concluding that the parties entered into a valid marriage in 2007. We disagree.

As set forth in OCGA § 19-3-1, "[t]o constitute a valid marriage in this state there must be: (1) Parties able to contract; (2) An actual contract; and (3) Consummation according to law." OCGA § 19-3-1 applies to both common law and

5

ceremonial marriages. See *Metro. Life Ins. Co. v. Lucas*, 761 FSupp. 130, 132 (M.D. Ga. 1991) ("Georgia case law confirms that [OCGA § 19-3-1] applies equally to both ceremonial and common-law marriages"). See also *Russell v. Sparmer*, 339 Ga. App. 207, 211 (1) (793 SE2d 501) (2016) (physical precedent only) (applying OCGA § 19-3-1 to determine the validity of a ceremonial marriage). Neither Husband nor Wife dispute their ability to contract at the time of the 2007 ceremony. See OCGA § 19-3-2 ("Persons able to contract"). As to the second element, "[t]o constitute an actual contract of marriage, the parties must consent thereto voluntarily without any fraud practiced upon either. . . ." OCGA § 19-3-4. We look to whether "the parties consented to marry each other and possessed a present intention to be married to each other." *Russell*, 339 Ga. App. at 211 (1). See also *Askew v. Dupree*, 30 Ga. 173, 178 (1860) ("[W]hat is necessary to make a contract? As in all other contracts, the consent of the parties, for without that, there can be no contract. . . ."). [2] Here, the evidence

---

[2] Husband contends that the trial court erroneously relied on common-law marriage cases to conclude that the 2007 ceremony was intended by the parties to be a lawful marriage ceremony and resulted in a valid marriage between the parties. While true that OCGA § 19-3-1.1 abolished common-law marriages in Georgia, Husband has not pointed to any binding authority indicating that we cannot rely on common-law marriage cases to the extent they construe the three elements found in OCGA § 19-3-1. Moreover, to the extent Husband argues that the OCGA § 19-3-1 elements are no longer relevant, we cannot agree. Such an argument would essentially nullify OCGA § 19-3-1, a Code section left intact by the General Assembly despite

supports the trial court's findings that the 2007 ceremony was intended by both Husband and Wife to be a lawful marriage ceremony and that Husband and Wife exchanged vows. To the extent Husband contends he did not intend to marry Wife at the time of the 2007 ceremony, the trial court discredited this testimony and resolved any conflicts in the parties' testimony in favor of Wife. See *Daniel v. Daniel*, 358 Ga. App. 880, 887 (1) (b) (856 SE2d 452) (2021) (this Court gives "deference to the trial court's factual findings and witness credibility determinations"). Based on the evidence, we cannot say that this was clearly erroneous.

The third element, consummation, refers to cohabitation as husband and wife. See, e.g., *Brown v. Brown*, 234 Ga. 300, 301 (215 SE2d 671) (1975). Husband contends that the trial court relied on an erroneous definition of consummation. In its order, the court cited *Lefkoff v. Sicro*, 189 Ga. 554 (6 SE2d 687) (1939), for the following language:

> Consummation can be shown in two ways: (a) obtaining a license to marry and performance of a ceremony by a person authorized to join persons in matrimony, or (b) by an actual agreement, in words of present

---

passage of OCGA § 19-3-1.1 in 1996. See *Oxford v. Carter*, 216 Ga. 821, 823 (1) (120 SE2d 298) (1961) ("[r]epeals by implication are not favored").

7

tense, to be man and wife with intention of thereby and thereupon assuming such relationship.

Id. at 565. "The Supreme Court's holding in *Lefkoff* was disapproved in *Drewry v. State*, 208 Ga. 239 (65 SE2d 916) (1951), to the extent that the Court in *Lefkoff* did not require cohabitation as an element of common law marriage." *Russell*, 339 Ga. App. at 212 (1), n.8. We agree with Husband that the Court's definition of "consummation" in *Lefkoff* is no longer applicable. See *Drewry*, 208 Ga. at 243-244 (3). Nonetheless, we find that the evidence supports the trial court's conclusion that the marriage was consummated. Husband and Wife agree that they lived together after the 2007 ceremony, and it is undisputed that Husband and Wife had three children together after the 2007 ceremony.

In sum, we find that the evidence establishes that all three statutory elements of a valid marriage existed at the time of the 2007 ceremony. In spite of this, Husband contends that it was not a valid marriage until the parties obtained a marriage license in 2016. However, we have found no binding authority establishing that the failure to procure a marriage license renders a ceremonial marriage void. As we pointed out in *Russell*,

[while v]arious statutes set forth the requirements for obtaining and issuing marriage licenses . . . and the penalties to be imposed upon an issuing authority or officiant failing to comply with these requirements, . . . [n]one of these statutes, . . . expressly renders void an unlicensed ceremonial marriage between persons able and willing to contract.[3]

339 Ga. App. at 212 (1), n.7.[4] Accordingly, we affirm the trial court's order declaring that the parties were married on October 7, 2007.

*Judgment affirmed. Doyle, P. J., and Reese, J., concur.*

---

[3] See OCGA §§ 19-3-30; 19-3-30.1; 19-3-31; 19-3-32; 19-3-33; 19-3-34; 19-3-35; 19-3-35.1; 19-3-36; 19-3-40; 19-3-41; 19-3-44; 19-3-45; 19-3-46; and 19-3-48.

[4] While we emphasized in *Russell* that we were not expressing an opinion on the merits of whether the parties were married because that issue was not before us, 339 Ga. App. at 213 (1), we now find the reasoning in *Russell* persuasive.