**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 21, 2013**

# In the Court of Appeals of Georgia

A13A1137. OMNI BUILDERS RISK d/b/a BEST VALUE INSURANCE SERVICES, INC. v. BENNETT.

A13A1138. ANNA MARIE DILLARD, AS EXECUTRIX OF THE ESTATE OF JAMES GREGORY DILLARD v. BENNETT.

BRANCH, Judge.

These companion appeals mark the second appearance of this dispute before us. Plaintiff Lori Bennett brought a discrimination charge before the Equal Employment Opportunity Commission ("EEOC") against her ex-employer, Omni Builders Risk, Inc. ("Omni"), on the ground that Bennett had been terminated because she had become pregnant. After an effort at mediation, Bennett sued Omni to enforce a settlement agreement allegedly reached there and also sued James Dillard, Omni's president and majority shareholder, for fraudulent inducement because he allegedly induced her to participate in the mediation. Omni counterclaimed for breach of the

mediation agreement, which had provided that the parties' negotiations could not become the subject of litigation. In *Omni Builders Risk v. Bennett* ("*Omni Builders I*"), 313 Ga. App. 358 (721 SE2d 563) (2011) (physical precedent only), this Court reversed a grant of partial summary judgment to Bennett because mediation had not produced a settlement agreement in that Dillard had refused to sign a proposed agreement. Id. at 362 (1).[1] On remand, Omni moved to add Bennett's counsel and counsel's law firm as party defendants to Omni's counterclaim for breach of the mediation agreement. The trial court granted Bennett's motion for summary judgment as to Omni's counterclaim on the ground that the mediation agreement was a contract between the parties and the mediation company, and "not a contract creating obligations between [Bennett] and [Omni] or the other signatories thereto." The trial court also denied Dillard's motions to add Bennett's counsel and her law firm as party defendants to Omni's counterclaim and for attorney fees under OCGA § 9-15-14.

In Case No. A13A1137, Omni argues that the trial court erred when it dismissed Omni's counterclaim for breach of the mediation agreement and when it denied Omni's motion to add Bennett's counsel and her law firm as party defendants to that

---

[1] The EEOC eventually dismissed Bennett's charge of discrimination, finding that Omni did not have the required number of employees and thus was not an "employer" for purposes of Title VII. See id. at 360, n. 2.

2

counterclaim. In Case No. A13A1138, Dillard's daughter[2] argues that the trial court erred when it refused to conduct an evidentiary hearing on her motion for attorney fees under OCGA § 9-15-14 and when it denied her motion to add Bennett's counsel and her law firm as parties. We affirm in Case No. A13A1137 and reverse and remand for further proceedings in Case No. A13A1138.

> The underlying facts are set out in our previous opinion as follows:

> During the pendency of the EEOC claim, per Bennett's employment contract with Omni, on November 2, 2008, the parties attended a mediation at which [Dillard,] Bennett and their respective attorneys were present. The four attendees signed a mediation agreement which provided guidelines for the mediation process.

*Omni Builders I*, supra at 359. The mediation agreement was reached by what the preamble to the document called "the undersigned parties," including Dillard, Dillard's counsel, Bennett, and Bennett's counsel. The mediation agreement specified that the mediation service's "contract for services is with the attorney(s)," from whom the mediation service "expect[ed] payment." The agreement also provided that "[a]ll that occurs during the mediation process shall be confidential and may not be

---

[2] James Dillard died in August 2011, before the issuance of our decision in *Omni Builders I*.

recorded, and shall not be revealed in any subsequent legal proceedings or otherwise," and that "[a]ll parties agree not to institute any action based on the mediation."

During the mediation,

the parties preliminarily agreed to settle the claim for $65,000, after which the mediator prepared a "settlement memorandum" which had signature lines for both parties and their attorneys. The memorandum provided that Bennett would release all claims and withdraw the discrimination charge filed with the EEOC, and accept $65,000 in damages, and Omni would pay the mediation costs. The memorandum included a provision for $2,000 in liquidated damages for breach of the settlement agreement. Bennett and Dillard were in separate caucus rooms during this time, and Dillard's attorney averred that the mediator prepared the memorandum after several hours of negotiation and took the proposal to Bennett and her attorney first for their signatures. After Bennett and her attorney signed the memorandum, the mediator took the memorandum to Dillard and his attorney. The attorney signed the document, but Dillard refused and left the mediation. The mediator returned to Bennett and her attorney and told them about the incident.

*Omni Builders I*, supra at 359. Bennett then brought this action against Omni for breach of the settlement agreement and expenses of litigation under OCGA § 13-6-11, and against Dillard personally for fraudulent inducement.

Bennett's claim for fraudulent inducement alleged that Dillard had "represented to [Bennett] that he had a good faith interest in settling their dispute when he agreed

4

to mediate it"; that Bennett had "relied on [Dillard's] representation" as she prepared for and attended the mediation; and that "when [Dillard] suddenly and inexplicably refused to abide by the terms of the settlement agreement created by and assented to by the parties," Bennett suffered damages "equaling wages lost while attending the mediation and attorney[ ] fees incurred as a result of the mediation." At deposition, however, Bennett testified that she knew that her employment contract required her to mediate any dispute with Omni, that Dillard had made no representation on which she relied in preparing for or attending the mediation, that she was not aware that her counsel had added a claim of fraudulent inducement against Dillard, and that counsel had instructed her not to answer whether she had authorized them to sue Dillard personally.

In his answer, Dillard alleged that Bennett had failed to state a claim for fraud. Dillard also moved for a more definite statement of that claim. On December 8, 2009, Bennett's counsel sent Dillard's counsel an email to the effect that Dillard's motion was "convincing" such that Bennett would dismiss her fraudulent inducement claim. On December 15, 2009, Bennett dismissed the fraudulent inducement claim without prejudice. In his deposition, Dillard testified that although "a lot of people . . . assumed" that Omni or its insurer "would have to pay some sort of money" in order

5

to settle Bennett's claim, Dillard himself "knew" that the case would not require settlement.

At an April 2012 hearing on pending motions in the case, the trial court barred Dillard from examining Bennett's counsel concerning the framing and prosecution of Bennett's fraudulent inducement claim. In its final orders, the court granted Bennett's oral motion for summary judgment on Omni's counterclaim, denied Omni's motion to add Bennett's counsel and her law firm as party defendants to that counterclaim, and denied Dillard's motion for fees, concluding that there was "a great deal of circumstantial evidence from which [Bennett] and her attorneys could have reasonably believed that a fraudulent inducement claim against Dillard was well-founded." These appeals followed.

## Case No. A13A1137

1. Omni first argues that the trial court erred when it dismissed Omni's counterclaim for breach of the mediation agreement. We disagree.

The construction of a contract "involves a question of law for the court to resolve based on the intent of the parties as reflected in the agreement. We review this issue de novo." (Citations omitted.) *Savannah Yacht Corp. v. Thunderbolt Marine*, 297 Ga. App. 104, 109 (1) (676 SE2d 728) (2009).

6

First, we must determine if the contract language is ambiguous, and, if so, then we apply the appropriate rules of construction set forth in OCGA § 13-2-2. Where the language of a contract is plain and unambiguous, however, no construction is required or permissible and the terms of the contract must be given an interpretation of ordinary significance.

(Citation and punctuation omitted.) Id.

As we have noted, the mediation agreement provided that "[a]ll that occurs *during the mediation process* shall be confidential . . . , and shall not be revealed in any subsequent legal proceedings or otherwise," and that "[a]ll parties agree not to institute any action based on the mediation." (Emphasis supplied.) The agreement also defined the "mediation process," however, as "a non-adversarial settlement negotiation that can only result in a resolution if all [p]arties voluntarily agree." Bennett brought suit not as to anything that occurred *during* the parties' settlement negotiations (the "mediation process"), but rather as to an allegedly complete settlement agreement. Accordingly, because Bennett's lawsuit was based on the result of the mediation process, and not the process itself, Bennett did not violate the confidentiality provision of the mediation agreement. Finally, if we were to bar a party from attempting to enforce a settlement agreement, we would undermine the rule that

7

"when parties have entered into a definite, certain, and unambiguous agreement to settle, it should be enforced." (Citation omitted.) *Savannah Yacht*, supra at 109 (1). Because Bennett did not breach the plain terms of the mediation agreement when she filed suit to enforce a settlement allegedly reached as a result of mediation, the trial court did not err when it dismissed Omni's counterclaim for breach of the mediation agreement.

2. Our affirmance of the trial court's dismissal of Omni's counterclaim moots the question of necessary parties to that counterclaim.

Case No. A13A1138

3. In this companion appeal, Dillard's principal argument is that the trial court erred when it denied his motion for attorney fees under OCGA § 9-15-14 on the basis that Bennett's claim of fraudulent inducement presented no justiciable issue of law or fact and lacked any substantial justification. We agree.

OCGA § 9-15-14 (a) provides that

reasonable and necessary attorney's fees and expenses of litigation *shall* be awarded to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such *a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position*.

8

(Emphasis supplied.) "The standard for reviewing an OCGA § 9-15-14 (a) ruling is the any evidence standard." (Citations omitted.) *Brown v. Kinser*, 218 Ga. App. 385, 387 (2) (461 SE2d 564) (1995); see also *Bircoll v. Rosenthal*, 267 Ga. App. 431, 439-440 (2) (c) (600 SE2d 388) (2004). "When considering an appeal from an award of attorney fees made under OCGA § 9-15-14 (a), we must determine whether the claim asserted below either had some factual merit or presented a justiciable issue of law." (Citations omitted.) *Brown*, supra at 387 (2). "This same principle should be applied when determining whether a trial court erred in denying a motion for litigation costs and attorney fees." Id.

Where no evidence shows any factual merit in a party's claim of fraud, a trial court errs by not awarding attorney fees to the opposing party seeking them under OCGA § 9-15-14 (a). *Brown*, supra at 389 (2). Bennett cites only Dillard's deposition testimony as support for the proposition, accepted by the trial court, that her fraudulent inducement claim was "colorable." On the contrary, Dillard's testimony shows only that he believed that he and/or his insurer would be victorious in the matter, including the mediation, and provides no evidence that he ever made any representation about mediation to Bennett, let alone a fraudulent one. As Dillard pointed out below, moreover, Bennett herself testified that her employment contract

9

required mediation and that she did not rely on any representation by Dillard in preparing for and attending the mediation. Finally, the fact that Bennett voluntarily dismissed her claim does not prevent an award under OCGA § 9-15-14 because litigants and counsel are bound to exercise "a minimum amount of diligence" *before* filing suit. *Bircoll*, 267 Ga. App. at 437 (1) (plaintiffs' voluntary dismissal of claim after discovery does not prevent OCGA § 9-15-14 award of fees concerning that claim) (footnote and punctuation omitted).

Because Bennett has produced no evidence showing that her claim for fraudulent inducement had any merit, and because her own testimony flatly contradicts the position taken in that claim, the trial court erred when it denied Dillard's motion for attorney fees incurred in defending against that claim. See *Brown*, supra at 389 (where "there exist[ed] no evidence giving rise to factual merit in appellees' claim that the statute of limitation was tolled due to fraud," a trial court abused its discretion in denying appellant's motion for fees under OCGA § 9-15-14); *Cavin v. Brown*, 246 Ga. App. 40, 43-44 (3) (538 SE2d 802) (2000) (affirming trial court's award of attorney fees under OCGA § 9-15-14 (a) when party's own evidence showed that his asserted defense "could not possibly be believed"). We therefore reverse the trial court's order as to fees under OCGA § 9-15-14 and remand for further

10

proceedings, including an evidentiary hearing, limited to the amount of reasonable fees incurred by Dillard and properly awarded against Bennett's counsel and/or her law firm concerning the fraudulent inducement claim. See *Johnston v. Correale*, 285 Ga. App. 870, 871 (1) (648 SE2d 180) (2007) ("In order to recover attorney fees [under OCGA § 9-15-14], a prevailing party must prove both their actual cost and their reasonableness") (foonote omitted); *Bankston v. Warbington*, 319 Ga. App. 821, 823 (2) (738 SE2d 656) (2013) (vacating an award of fees under OCGA § 9-15-14 and remanding for a hearing, "if requested on remand," as to the "appropriate amount of attorney fees") (citation omitted); *Walker v. Walker*, 293 Ga. App. 872, 878-879 (4) (668 SE2d 330) (2008) (vacating an award of fees where the trial court failed to make "necessary findings, including that the fees were reasonable," when it made the award) (citations omitted).

4. Dillard also argues that the trial court erred when it barred her from offering evidence on fees at the April 2012 hearing, when it authorized Bennett's counsel to state matters in her place concerning the prosecution of the fraudulent inducement claim, and when it granted Bennett's motion to quash subpoenas of Bennett and her attorneys and denied Dillard's motion to strike Bennett's motion.

11

Because our holding in Division 3 finds Bennett's counsel and/or her law firm liable as a matter of law for reasonable fees incurred by Dillard in defending against Bennett's fraudulent inducement claim, it moots these assertions of error concerning the trial court's handling of evidence and discovery on the merits of that claim.

*Judgment affirmed in Case No. A13A1137. Judgment reversed and case remanded with direction in Case No. A13A1138. Phipps, C. J., and Ellington, P. J., concur.*