**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 21, 2018**

# In the Court of Appeals of Georgia

A18A0577. DURRANCE v. SCHAD.

PHIPPS, Senior Appellate Judge.

After Raymond C. Schad dismissed his petition seeking a stalking temporary protective order ("TPO") against Lorri S. Durrance, Durrance filed a motion seeking her costs and attorney fees associated with defending against that petition. Following an evidentiary hearing, the trial court denied Durrance's motion. Durrance appeals, asserting that the trial court abused its discretion in refusing to award her costs and legal fees under OCGA § 16-5-94 and OCGA § 9-15-14 (b). Additionally, Durrance contends that the trial court committed legal error when it refused to award her fees and costs under OCGA § 9-15-14 (a). For reasons explained more fully below, we find no abuse of discretion by the trial court in refusing to award fees under OCGA § 16-5-94. We further find, however, that given the absence of any evidence

supporting Schad's claim of stalking, the trial court erred when it failed to award Durrance costs and attorney fees under OCGA § 9-15-14 (a).

Viewed in the light most favorable to the trial court's ruling, the record shows that in approximately February 2017, Schad performed some repair or remodeling work on the residence of Durrance and her husband. At some unspecified time between February and June 2017, Schad became employed with Jasper County as a building inspector. On June 28, 2017, believing that Schad had not completed the work at her residence, Durrance called Schad's wife, who handled his billing. A short time later, Schad arrived at the real estate office where Durrance worked, driving his county-owned truck and wearing his county uniform. The two began to discuss the work Schad had done for Durrance and the conversation became so heated that one of Durrance's coworkers eventually forced Schad to leave. Durrance reported the incident to police, who contacted Schad's supervisor. Schad was subsequently served with a warrant for trespass.

On June 30, two days after the incident, Schad filed a pro se petition for a stalking TPO. Schad alleged that Durrance had committed "acts of stalking" in violation of OCGA § 16-5-90 by making the following statements: "You sealed your doom"; "I know people and will have your job"; and "I'll get you." Schad further

alleged that "similar events may occur in the future" and that this conduct "placed [Schad] in reasonable fear for . . . his own safety and/or the safety of . . . his immediate family."

A hearing on Schad's petition was originally scheduled for July 18, but was continued until August 1 at Durrance's request. On July 31, Schad dismissed the petition without prejudice. Durrance then filed a motion seeking costs and attorney fees under OCGA § 16-5-94 and OCGA § 9-15-14 (a) and (b). At the evidentiary hearing on that motion, both of Durrance's coworkers who witnessed the incident testified that Schad came to the real estate office and spoke with Durrance and that the conversation deteriorated into a shouting match. One coworker, a police veteran with more than 25 years of experience, eventually told Schad he needed to leave the premises. Schad initially refused that request, but after a few minutes, he exited the building and stood outside the door where he continued to yell at Durrance, telling her, "You'll hear from me." According to both coworkers, Schad threatened Durrance by telling her she might not have the proper permits for work done on her house and indicating that, in his capacity as a county building inspector, he was going to check on those permits.

Durrance gave similar testimony, stating that Schad appeared at her office on June 28, shortly after she had spoken with Schad's wife. The two began to argue, with both parties raising their voices. Durrance testified that her coworker eventually came over to ask Schad to leave because Schad is "a large man" and "he was leaning over my desk [,] hovering" and "he was very intimidating and everybody in the office was shaking and scared." At one point, Schad threatened to "pull [the building] permits on my house," and indicated she might not be able to obtain permits in the future. Schad also asked Durrance whether she was sure the swimming pool at her residence was properly permitted. At that point, Durrance told Schad, "I'm done . . . I do know some people here, too," and also told Schad that he did not "belong in this position" as a building inspector.

After Schad left the real estate office, Durrance filed a report with the police and Schad was eventually served with a warrant for trespass. Less than an hour after the incident, Durrance was contacted by Shane Seeley, the Jasper County Director of Planning and Zoning, who also served as Schad's supervisor. According to both Seeley and Durrance, Seeley visited Durrance at her office later that day in an effort to defuse the situation and get the dispute "worked out." During that conversation,

4

Durrance made clear to Seeley that she thought Schad should lose his job. Seeley was unaware, however, of any other effort Durrance may have made to get Schad fired.

Schad testified and explained that on the day in question he received a call from his wife asking why he had not completed the work at the Durrance residence. Schad then went to Durrance's office to discuss the situation, and the conversation became "heated." Schad acknowledged that he escalated the situation when he began asking Durrance about her building permits, explaining, "I was being a smart ale[k]. I shouldn't have said it." According to Schad, Durrance responded by threatening him, saying, "I got you. You sealed your doom. I'll have your job. I know people in this town, too."

When asked why he had filed the petition for the stalking TPO, Schad responded "[t]he same reason why I got served a trespass warrant," explaining that he and Durrance did not need to be around one another. Schad then elaborated:

> Basically, I'm a man, she's a woman. I am rather large. I'm loud. I coach football. . . . I've got a big bark. Basically, I would never even touch a woman or anything to hurt a woman. I did feel overbearing [during the incident]. I wouldn't want anybody to do [what I did to Durrance] to my wife. I felt it was best that I just . . . have nothing to do with her. Me being a man and everything, you know, if something did happen and the police did show up, who are they going to look at?

5

Schad further explained that Seeley had come back from his meeting with Durrance and told him that Durrance was "going to put pressure on this department" to fire Schad and that given Schad's health problems, which included high blood pressure, he just did not "need the stress." Schad then explained "I got the TPO basically thinking that she would just leave my job alone, leave me alone, and give it a couple of weeks, she'd go on her way and I'd go on my way."

Schad also testified that after he filed his petition for the TPO, he continued to experience stress over the situation because builders that he interacted with as part of his employment continued to ask him about the incident. As a result of this stress, and to avoid seeing Durrance (whose office building was located next door to Schad's county office), Schad quit his job. He then dismissed his petition against Durrance.

After hearing this evidence, the trial court entered an order denying Durrance's motion for costs and attorney fees. Durrance now appeals from that order.

1. Durrance asserts that the trial court erred in denying her motion for attorney fees under OCGA § 16-5-94. That statute enables a trial court hearing a petition on a stalking TPO to"grant a protective order or approve a consent agreement to bring about a cessation of conduct constituting stalking." OCGA § 16-5-94 (d). The statute

6

further provides that any such order or consent agreement "may," inter alia, "[a]ward costs and attorney's fees to either party . . . ." OCGA § 16-5-94 (d) (3).

Under the plain language of the statute, the trial court has the discretion to award costs and attorney fees only where the petition results in the entry of a court order or a consent agreement designed to end the conduct constituting stalking. See *De Louis v. Sheppard*, 277 Ga. App. 768, 771 (3) (627 SE2d 846) (2006). The statute does not provide the trial court with the discretion to award costs and fees where no such order or consent agreement is entered – i.e., where the court never rules on the merits of the petition. See *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013) (we afford the language of a statute "its plain and ordinary meaning," and we read its text in the "most natural and reasonable way, as an ordinary speaker of the English language would"); *Arby's Restaurant Group, Inc. v. McRae*, 292 Ga. 243, 245 (1) (734 SE2d 55) (2012) (when applying a statute "we must presume that the General Assembly meant what it said and said what it meant") (citation omitted). Given that the petition in this case was dismissed before any order was entered, the trial court did not abuse its discretion in denying Durrance's motion for attorney fees under OCGA § 16-5-94 (d).

7

2. Durrance also contends that the trial court erred in denying her motion for attorney fees under OCGA § 9-15-14 (a) and (b).

(a) Under subsection (a) of OCGA § 9-15-14, "a trial court *shall* award reasonable and necessary attorney fees and expenses of litigation when a party has asserted a position that lacked any justiciable issue of law or fact such that it could not reasonably be believed that the court would accept the claim in question." *Russell v. Sparmer*, 339 Ga. App. 207, 209 (1) (793 SE2d 501) (2016) (emphasis supplied). See also OCGA § 9-15-14 (a). When reviewing the grant or denial of a motion requesting costs and fees under OCGA § 9-15-14 (a), we will affirm the trial court's order if there is any evidence to support it. *Southland Outdoors, Inc. v. Putnam County*, 265 Ga. App. 399, 401 (593 SE2d 940) (2004). This Court has made clear, however, that "[w]here no evidence shows any factual merit in a party*'s* claim . . . a trial court errs by not awarding attorney fees to the opposing party seeking them under OCGA § 9-15-14 (a)." *Omni Builders Risk v. Bennett*, 325 Ga. App. 293, 297 (3) (750 SE2d 499) (2013). See also *Southland Outdoors*, 265 Ga. App. at 401. Moreover, the fact that a plaintiff voluntarily dismisses his or her claim "does not prevent an award under OCGA § 9-15-14 . . . ." *Omni Builders,* 325 Ga. App. at 297 (3).

Here, Schad swore out the petition for a TPO alleging that Durrance was engaging in acts of stalking towards him, in violation of OCGA § 16-5-90 (a). That statute provides, in relevant part,

> [a] person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person. . . . For the purposes of this article, the term "harassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose. This Code section shall not be construed to require that an overt threat of death or bodily injury has been made.

OCGA § 16-5-90 (a) (1).

At the hearing on Durrance's motion for attorney fees, Schad failed to come forward with any evidence that Durrance had engaged in any conduct that constituted stalking under OCGA § 16-5-90.[1] Nor did Schad show any conduct by Durrance that

---

[1] In his brief, Schad asserts that Durrance engaged in a harassing course of conduct against him by "contact[ing] various builders [in the county], Schad's wife, his supervisor at work, the Jasper County Sheriff's Department and other persons at [Schad's] job." These assertions, however, find no support in the record. Specifically,

9

put Schad in reasonable fear for his safety or the safety of his family. Instead, Schad admitted that he was the person who had escalated the argument with Durrance and that he was far more physically imposing than Durrance. Most importantly, Schad's testimony made clear that he did not file the petition for a TPO because he feared for his safety or that of his family. Instead, according to Schad, he filed the petition because Durrance had filed a police report and he feared that if he and Durrance had another altercation in the future, the police would side with Durrance. Schad further testified that he filed the petition because he wanted to make sure that Durrance did not attempt to interfere with his employment at Jasper County. Given Schad's admissions and the other evidence showing that he had no basis for seeking a TPO for stalking, the trial court erred in denying Durrance's motion for attorney fees under OCGA § 9-15-14 (a). See *Omni Builders*, 325 Ga. App. at 298 (3) (because the

---

there was no evidence that Durrance had contacted any builder who interacted with Schad in his capacity as a county building inspector. Moreover, the evidence showed that Durrance contacted Schad's wife on one occasion, prior to the incident at issue, to schedule the completion of work at the Durrance residence. Additionally, Durrance contacted the Sheriff's Department to report what she and her coworkers described as Schad's aggressive behavior, and she then left it to the police to determine what, if anything, should be done about the conduct reported. The evidence also showed that Schad's supervisor contacted Durrance, not that Durrance contacted the supervisor. Finally, there was no evidence that Durrance ever spoke with anyone else at Schad's place of work either about Schad in general or about the incident at issue.

plaintiff failed to produce any evidence showing that her claim had any merit and because plaintiff's own testimony showed that her claim was without merit, "the trial court erred when it denied [the defendant's] motion for attorney fees incurred in defending against that claim"); *Southland Outdoors*, 265 Ga. App. at 401 (reversing denial of a motion for attorney fees under OCGA § 9-15-14 (a) where the opposing party's "position was without factual or legal support"); *Brown v. Kinser*, 218 Ga. App. 385, 389 (2) (461 SE2d 564) (1995) (where "there exist[ed] no evidence giving rise to factual merit in [the plaintiff's] claim," a trial court abused its discretion in denying defendant's motion for fees under OCGA § 9-15-14).

(b) In light of our holding that Durrance is entitled to an award of costs and fees under OCGA § 9-15-14 (a), we need not address her claim that the trial court abused its discretion in denying her motion for fees under OCGA § 9-15-14 (b).

For the reasons set forth above, we affirm the trial court's denial of attorney fees pursuant to OCGA § 16-5-94. We reverse the trial court's order as to fees under OCGA § 9-15-14 (a) and remand for further proceedings, including an evidentiary hearing on the amount of reasonable fees incurred by Durrance in defending against Schad's petition. See *Shiv Aban, Inc. v. Georgia Dep't of Transp.*, 336 Ga. App. 804, 818 (2) (c) (784 SE2d 134) (2016) ("an award of attorney fees is to be determined

11

upon evidence of the reasonable value of the professional services which underlie the claim for . . . fees") (citation and punctuation omitted); *Omni Risk*, 325 Ga. App. at 298 (3).

*Judgment affirmed in part and reversed in part. Ellington, P. J., and Bethel, J., concur.*