**SECOND DIVISION**
**DOYLE, P. J.,**
**DAVIS, J., AND SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 1, 2026**

# In the Court of Appeals of Georgia

A26A0493. SONG v. EGPS SOLUTIONS I, INC. et al.

FULLER, Senior Judge.

In this action with derivative claims for breach of fiduciary duty and a direct claim for breach of contract, plaintiff Huiming Song appeals from the trial court's orders awarding attorney fees to nominal defendant Champion Instruments, LLC, and defendants eGPS Solutions I, Inc., and Travis Pruitt, Jr.[1] For the reasons that follow, we affirm the award of attorney fees to Champion, vacate the award of attorney fees to eGPS and Pruitt Jr., and remand the case with direction.

---

[1] The original defendant, Travis Pruitt, Sr., ("Pruitt") passed away during the pendency of the litigation, and his son, Travis Pruitt, Jr., ("Pruitt Jr.") was substituted as the named defendant in his capacity as trustee of the Travis Pruitt, Sr., 2012 Gift Trust.

This Court previously affirmed the trial court's dismissal of Song's derivative action and affirmed in part and reversed in part the grant of summary judgment to eGPS and Pruitt. *Song v. eGPS Solutions I, Inc.*, 371 Ga. App. 357 (899 SE2d 530) (2024). As relevant here, Pruitt and Lonnie Sears owned eGPS, which sells surveying equipment and supplies. Id. at 358. In 2010, Pruitt, Song, Sears, and another person formed Champion, "a limited liability company, in order to purchase and import surveying instruments from China and then act as a wholesaler to eGPS and other dealers." Id. (citation modified). Ultimately, the fourth original member sold his entire interest in Champion to Song, such that Pruitt owned 41.2 percent, Song owned 41.2 percent, and Sears owned 17.6 percent. Id. The members elected Pruitt to serve as Champion's sole manager, id. at 359, and Champion's operating agreement provided that the manager was responsible for its day-to-day business and affairs and was granted "full and complete power, authority, and discretion to take such action for and on behalf of" Champion as he deemed necessary to carry out its functions. However, the operating agreement also required the manager to obtain the approval of a majority of the members' interest to take action under certain circumstances,

including selling, conveying, or otherwise transferring "all or any substantial part" of Champion's assets, "other than in the ordinary course of business."

Champion's largest customer was eGPS, which provided Champion with employees and office and warehouse space. *Song*, 371 Ga. App. at 359. Champion often gave discounts of 25 to 40 percent to high-volume customers, and Pruitt "had the discretion to set these discounts as part of the ordinary course of business." Id. As Champion's largest customer, eGPS received a 40 percent discount. Id. But in 2016, upon learning that Champion's competitors were offering discounts of up to 50 percent, Pruitt authorized an increase in Champion's discount from 40 to 50 percent, retroactive to 2010. Id. This increased discount pushed Champion's net annual loss for the 2017 fiscal year from approximately $575 to over $300,000. Id. While this loss was borne by all of Champion's members, the credit benefitted Pruitt and Sears as the owners of eGPS. Id.

Also in 2016, Pruitt discovered that Song was promoting his own company, Shanghai HowayGIS Infotech Co., Ltd., to Champion's dealers, potentially poaching customers, and the relationship between Song and Champion began to deteriorate. *Song*, 371 Ga. App. at 360. "In January 2019, Song filed a derivative action against

Pruitt and eGPS, but because he failed to send a written demand notice, the complaint was dismissed without prejudice in February 2019." Id. Champion thereafter filed its own action in state court alleging breach of contract and breach of fiduciary duty against Song.[2] Song then refiled this action, seeking judicial dissolution of Champion and asserting derivative claims that Pruitt breached his fiduciary duty to Champion and that eGPS aided and abetted that breach, and a direct claim that Pruitt breached his contractual duties under the operating agreement by failing to act in good faith and failing to obtain the approval of the majority of the members prior to issuing the retroactive discount. Id. at 360 & n.3.

In response to the derivative action, Champion created a Special Litigation Committee ("SLC"), *Song*, 371 Ga. App. at 360, which issued a report in September 2020 concluding that Pruitt had acted diligently, in good faith, and within his authority to set prices and discounts. The SLC determined that Pruitt did not breach his fiduciary duty to Champion and, due to the "unique relationship" between

---

[2] That case ultimately proceeded to a jury trial, the jury awarded significant damages to Champion, and the trial court thereafter granted Song's motion for judgment notwithstanding the verdict and conditionally granted Song a new trial as to damages. Those cross-appeals are currently pending before this Court in *Champion Instruments, LLC v. Song; and vice versa*, Cases No. A26A0901 and A26A0902 .

Champion and eGPS, had no conflict of interest. Consequently, the SLC also determined that eGPS did not aid and abet a breach. Nevertheless, the SLC found that Pruitt and Sears, as shareholders of eGPS, received "indirect benefits" from the credit issued to eGPS, and it recommended that Champion reverse the credit and reinstate eGPS's accounts receivable in the amount of approximately $300,000. Subject to this adjustment, the SLC determined that the derivative action was without merit and recommended that Champion seek its dismissal.

Champion thereafter moved to dismiss Song's derivative action,[3] and eGPS and Pruitt moved for summary judgment on the derivative claims and direct breach-of-contract claim. *Song*, 371 Ga. App. at 362.

> The trial court granted Champion's motion to dismiss the derivative proceedings after concluding that the SLC acted independently and that Champion did what the SLC instructed. The trial court granted eGPS's and Pruitt's motion for summary judgment after concluding that Pruitt, as Champion's manager, did not breach any fiduciary duties owed to Song, that eGPS did not aid and abet Pruitt, and that the breach of contract claim against Pruitt directly failed as a matter of law.

---

[3] Although the motion to dismiss was filed in September 2020, Song asserts that Champion did not actually reinstate the accounts receivable until July 2022.

Id. On appeal, this Court held that the trial court did not err in granting Champion's motion to dismiss Song's derivative action or in granting Pruitt and eGPS summary judgment on Song's claims of breach of fiduciary duty and aiding and abetting. Id. at 362–71(1)–(4). However, this Court reversed, in part, the grant of summary judgment to Pruitt on Song's claim for breach of contract based on Pruitt's obligation to obtain prior approval, concluding "that genuine issues of material fact remain[ed] as to whether Pruitt's issuance of the credit memoranda implicated" this contractual duty "and, if so, whether Song waived the right to object." Id. at 372(5)(a). Finally, this Court affirmed the grant of summary judgment on Song's breach-of-contract claim based on Pruitt's contractual fiduciary duty to act in good faith, finding that this claim was a "warmed-over version" of Song's claim for breach of fiduciary duty. Id. at 372(5)(b). On this last point, one judge dissented, explaining that she was not convinced "that no genuine issues of material fact remain[ed] as to whether Pruitt's decision to issue the multi-year, retroactive credit to eGPS, and the resulting significant impact on Champion's financial operations, breached his fiduciary duty to Champion." Id. at 373(1) (Gobeil, J., dissenting in part).

After the case was returned to the trial court, Song voluntarily dismissed all of his claims.[4] Champion then moved for attorney fees pursuant to OCGA §§ 9-15-14 and 14-11-806.[5] Pruitt Jr. and eGPS also filed a motion for attorney fees under OCGA §§ 9-15-14 and 14-2-746. Following a hearing, the trial court granted attorney fees to Champion in the amount of $281,053.28 pursuant to OCGA §§ 9-15-14(b) and 14-11-806 and, by separate order, awarded attorney fees to eGPS and Pruitt Jr. in the amount of $57,812.05. This appeal follows.

"As a general rule, Georgia law does not provide for the award of attorney fees even to a prevailing party unless authorized by statute or by contract. When awarded by statute, such fees may be obtained only pursuant to the statute under which the action was brought and decided." *Suarez v. Halbert*, 246 Ga. App. 822, 824(1) (543

---

[4] While Song indicated that his dismissal was "without prejudice," he could not refile the case given his previous dismissal and renewal. See OCGA § 9-2-61(a) (explaining that the "privilege of renewal shall be exercised only once").

[5] We note that Champion's original motion for fees, filed in February 2023, is not a part of the record in this case. Rather, it is a part of the record in the prior appeal in *Song*, 371 Ga. App. 357 (Case No. A23A1458). Although Champion filed a notice of the related case in this appeal in October 2025 and directs our attention to the record in Case No. A23A1458 in its brief, it does not appear that any party asked this Court to retain the record in Case No. A23A1458 or directly notified this Court of their intention to rely on the record in the prior appeal. See Ga. Ct. App. R. 42.

SE2d 733) (2000) (citation omitted). Accord *Azizan v. Hajianbarzi*, 372 Ga. App. 396, 399(2) (903 SE2d 677) (2024). In this case, as set forth above, the defendants requested fees under OCGA §§ 9-15-14(a) and (b), 14-11-806, and 14-2-746.

Under OCGA § 9-15-14(a), which applies in any civil action, a trial court must award reasonable and necessary attorney fees where a party has asserted a claim or other position that lacked "any justiciable issue of law or fact" so that it could not reasonably be believed that a court would accept it. When considering an appeal from an OCGA § 9-15-14(a) fee award, "we must determine whether the claim asserted below either had some factual merit or presented a justiciable issue of law." *Omni Builders Risk, Inc. v. Bennett*, 325 Ga. App. 293, 297(3) (750 SE2d 499) (2013) (quotation marks omitted). We will affirm an award under OCGA § 9-15-14(a) "if there is any evidence to support it." *Reynolds v. Clark*, 322 Ga. App. 788, 789(1) (746 SE2d 266) (2013).

Pursuant to OCGA § 9-15-14(b), which also applies to any civil action, a trial court may award attorney fees if it finds that a party

> brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party

unnecessarily expanded the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures.

The phrase "lacked substantial justification" means "substantially frivolous, substantially groundless, or substantially vexatious." OCGA § 9-15-14(b). We will affirm a fee award under OCGA § 9-15-14(b) "absent an abuse of discretion." *Ernest v. Moffa*, 359 Ga. App. 678, 685(5) (859 SE2d 834) (2021) (quotation marks omitted). "Under that standard, we review the trial court's legal holdings de novo, and we uphold the trial court's factual findings as long as they are not clearly erroneous, which means there is some evidence in the record to support them." Id. (quotation marks omitted).

OCGA § 14-11-806(b) permits a court to order a plaintiff in a derivative action regarding a limited liability company to pay reasonable expenses — including attorney fees — to the parties named as defendants, if the court finds "that the action was commenced or maintained without reasonable cause or for an improper purpose." And upon the same finding that an action was "without reasonable cause or for an improper purpose," after a derivative proceeding involving a corporation ends, the court similarly may order the plaintiff to pay "any defendant's reasonable expenses

9

(including attorneys' fees) incurred in defending the proceeding." OCGA § 14-2-746. Fee awards under OCGA §§ 14-11-806 and 14-2-746 are also reviewed for abuse of discretion. See *Brooks v. Hayden*, 355 Ga. App. 171, 171–72 (843 SE2d 594) (2020) ("This Court generally applies an abuse-of-discretion standard in cases involving a claim of error in the decision to award or deny attorney fees." (quotation marks omitted)).

As set forth above, the trial court awarded fees to Champion pursuant to OCGA §§ 9-15-14(b) and 14-11-806. As discussed in more detail below, it appears that the trial court awarded fee to eGPS and Pruitt Jr. under OCGA § 9-15-14(a), although the statutory basis of this fee award is not entirely clear.

1. (a) Turning to Song's claims of error, he first contends that the trial court erred in awarding fees to Champion because his claims did not lack substantial justification under OCGA § 9-15-14(b). This argument is not compelling.

In its fee award to Champion, the trial court determined that Song's allegation that Pruitt breached his managerial fiduciary duties by issuing market rate discounts and a retroactive credit to eGPS "lacked substantial justification" because Pruitt had broad pricing authority. As such, the court determined that Song's derivative claim

was "substantially frivolous" and "substantially groundless" in light of the language of Champion's operating agreement. The court also found "additional aggravating factors," including that all of Champion's financial statements were provided to Song and his attorney before they filed suit, Song admitted he did not read the operating agreement until after he filed suit, and Song continued the suit even after the SLC recommended dismissal. Thus, the court concluded that Song and his counsel, Robert Kaufman, pursued a substantially frivolous derivative action, warranting attorney fees under OCGA § 9-15-14(b). For the same reasons, the court also found that Song commenced and maintained the derivative action without reasonable cause within the meaning of OCGA § 14-11-806.

Song argues that, although Champion prevailed in dismissing the derivative action, the determinative issue is not whether he was unsuccessful, but whether "some authority arguably supported" his position. See *Russell v. Sparmer*, 339 Ga. App. 207, 210(1) (793 SE2d 501) (2016) (explaining that a grant of summary judgment, without more, will not support an award of attorney fees) (physical precedent only). Song further contends that, as a minority shareholder, he was entitled to assert that Pruitt breached his duty of good faith by issuing a retroactive discount

11

to eGPS. See, e.g., *Quinn v. Cardiovascular Physicians, P.C.*, 254 Ga. 216, 217–18(2) (326 SE2d 460) (1985) ("Directors may decide in good faith what is best for the corporation, but this interest must be consistent with good faith to the minority stockholder." (quotation marks omitted)). Song also points to provisions of the operating agreement requiring Pruitt to act in "a manner he believe[d] in good faith to be in the best interest of" Champion and with the care an ordinarily prudent person would exercise and imposing upon Pruitt, as manager, a fiduciary obligation to conduct Champion's business "in such manner as will serve the best interests" of the company and its members.

Although these arguably are facts in Song's favor, Song's "approach ignores the extensive factual findings of the trial court and the applicable standard of review." *Cohen v. Rogers*, 341 Ga. App. 146, 149(2)(a) (798 SE2d 701) (2017). The question is not whether a different court might have made a different fee award when faced with the same record. Rather, the proper application of the abuse-of-discretion standard requires us to affirm the trial court's decision if its factual findings are supported by some evidence, "regardless of whether judges on this Court would have made those same findings." Id. at 151(2)(a). See generally *Ernest*, 359 Ga. App. at 685(5). "It is

not the role of this Court to ignore or reform the findings of fact made by the trial court." *Cohen*, 341 Ga. App. at 151(2)(a).

As set forth above, the trial court's factual findings — that Song had all of the financial information available to him and failed to read the operating agreement before filing suit and continued his derivative action even after the SLC issued its recommendation — are all supported by some evidence. Moreover, the trial court's determination that Pruitt had broad authority to award discounts reveals no error. See *Song*, 371 Ga. App. at 369(3)(a) (concluding "that Pruitt did not breach any managerial fiduciary duty by merely taking action expressly authorized by the operating agreement"). Accord *Colquitt v. Buckhead Surgical Assocs., LLC*, 351 Ga. App. 525, 529(2)(a) (831 SE2d 181) (2019). For these reasons, we cannot conclude that the trial court abused its discretion in finding that Song's derivative claim against Pruitt for breach of fiduciary duty lacked substantial justification.[6] As such, we are

---

[6] And although Song makes much of Judge Gobeil's partial dissent in *Song*, 371 Ga. App. at 373 (Gobeil, J., dissenting in part), the dissent concerned the direct breach-of-contract claim against Pruitt, not the derivative claim against Champion. Indeed, in her partial dissent, she fully concurred with the majority in its ruling that the trial court did not err in dismissing the derivative action and she further concurred to the extent that "Song's derivative claim[] for breach of fiduciary duty against Pruitt" was extinguished by the trial court's dismissal of the derivative action. See id. 373(2) (Gobeil, J., dissenting in part).

required to affirm the trial court's grant of attorney fees to Champion under OCGA § 9-15-14(b). See *Ernest*, 359 Ga. App. at 685(5).

(b) Song also contends the trial court erred in awarding fees to Champion pursuant to OCGA § 14-11-806. Because we have already affirmed the fee award against Song and his counsel pursuant to OCGA § 9-15-14(b), and OCGA § 14-11-806 was merely an alternative basis for those same fees, it is unnecessary to consider this argument.

2. Next, Song contends the trial court erred in awarding fees to eGPS and Pruitt Jr. under OCGA § 9-15-14(a) because there was not a complete absence of any justiciable issue of law or fact. We agree that this award must be vacated.

In its award, the trial court found that Song's "claims" against eGPS and Pruitt "lacked factual merit and did not present a justiciable issue of law" because Pruitt was authorized to make discretionary business decisions such as the retroactive issuance of credit. By using this language, the trial court appears to have determined that fees were warranted under OCGA § 9-15-14(a), although it never explicitly cites the code subsection.

"When a trial court awards attorney fees under OCGA § 9-15-14, the trial court must specify the conduct upon which the award is made, and a judgment devoid of such findings must be vacated and the case remanded for reconsideration of the issue." *Robinson v. Williams*, 280 Ga. 877, 880(3) (635 SE2d 120) (2006). Here, the trial court's order awarding fees to Pruitt Jr. and eGPS does not distinguish between Song's prosecution of the derivative claims against Pruitt and eGPS for breach of fiduciary duty and his direct claim against Pruitt for breach of contract. This distinction is important because, while the derivative action was dismissed and the dismissal affirmed on appeal, and this Court affirmed the grant of summary judgment to Pruitt and eGPS on Song's claim for breach of fiduciary duty,[7] this Court reversed in part the grant of summary judgment to Pruitt on Song's claim for breach of contract. *Song*, 371 Ga. App. at 371–72(5). As such, there is no evidence to support the trial court's conclusion that *all* of Song's claims against Pruitt — including the direct claim for breach of contract — lacked "any justiciable issue of law or fact" such that it could not reasonably be believed that a court would accept any of them. OCGA §

---

[7] As the only claim against eGPS was the derivative claim for aiding and abetting Pruitt in his breach of his fiduciary duty to Champion, we do not consider it separately.

9-15-14(a). We also note that in its fee award, the trial court additionally set forth the standards for granting fees in a corporate derivative action pursuant to OCGA § 14-2-746, which arguably does not apply here because Champion is a limited liability company. Compare OCGA § 14-11-806, with OCGA § 14-2-746. In any event, it is unclear if the trial court intended to award any fees under OCGA § 14-2-746 because, as set forth above, the court referenced no particular statute in making its award. And when there is more than one statutory basis for fees and neither the statutory basis nor the findings are stated in the order or revealed in the record, the case must be "remanded for an explanation of the statutory basis for the award and the entry of any findings necessary to support it." *Brooks*, 355 Ga. App. at 172 (quotation marks omitted). For these reasons, we vacate the award of attorney fees to Pruitt Jr. and eGPS and remand the case for reconsideration of this issue and clarification of the basis for the award. See *Robinson*, 280 Ga. at 880(3).

3. Finally, Song contends the trial court erred in failing to limit the awards to fees incurred as a result of sanctionable conduct. Because we have already vacated the award of fees to Pruitt Jr. and eGPS, we will consider this argument only as it relates to the award of fees to Champion. So limited, this argument is not compelling.

Champion requested over $300,000 in fees. The trial court, in awarding $281,053.28 in fees, indicated that all attorney fees incurred by Champion were a result of Song's sanctionable conduct of commencing and maintaining a substantially frivolous derivative action, that the fees were reasonable and necessary under the circumstances, and that it had excluded from its calculation any invoices as to work "deemed duplicative, lacking in specificity, and/or related" to the separate state court action against Song. On appeal, Song contends that the trial court failed to "carve out" any fees incurred by Champion in defending against Song's claim for breach of contract. But that claim was asserted only against Pruitt, and the award to Champion was explicitly limited to fees incurred in defending the derivative claim. As Song does not point to any specific fees incurred by Champion in defending Pruitt against the direct claim asserted against him, this argument fails. See *Fortson v. Brown*, 302 Ga. App. 89, 90(1) (690 SE2d 239) (2010) (explaining that "it is not the function of this Court to cull the record on behalf of a party in search of instances of error," and the "burden is upon the party alleging error to show it affirmatively in the record" (quotation marks omitted)).

17

We do not authorize the reporting of this opinion because it does not announce a new rule or policy or involve an interpretation of law that is not already precedent. See Ga. Ct. App. R. 33.2(b), 34.

*Judgment affirmed in part and vacated in part, and case remanded with direction.*

*Doyle, P. J., and Davis, J., concur.*